**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | CASE NO. 20-30706 |
| PERFECT FIT INDUSTRIES, LLC | **)** | |
| Debtor, | **)** | CHAPTER 7 |
| | **)** | |

**SERTA, INC.'S OBJECTION TO**
**TRUSTEE'S MOTION FOR AUTHORITY TO SELL INVENTORY, TRADEMARKS**
**AND CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363**

Serta, Inc.("Serta"), the owner of certain trademarks and a creditor of the Debtor, Perfect Fit Industries, LLC ("PFI" or the "Debtor"), hereby files this Objection to the Trustee's Motion for Authority to Sell Inventory, Trademarks and Certain Personal Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. § 363 (the "Sale Motion"), showing the Court as follows:

**I.    INTRODUCTION**

1.    The Trustee seeks authority to sell, free and clear of liens, claims and encumbrances, certain inventory, trademarks and certain personal property which the Trustee asserts is owned by the Bankruptcy Estate.  The Bankruptcy Estate does not own or have a right to use or sell the Serta Trademarks (defined below) and cannot sell the significant portion of the inventory which is branded with trademarks of Serta (the "Serta Trademarked Inventory")(Collectively, the Serta Trademarks, Serta Trademarked Inventory and License Agreement are referred to herein as the "Serta Trademarked Assets"). Specifically, the Trustee seeks to sell Serta branded furniture covers and other assets of Debtor to Royal Heritage Home, LLC ("RH") ("Part One Personal Property") for $515,000.  The Trustee also seeks to sell Serta branded warming and non-warming inventory listed on Exhibit B to the Sale Motion to R&M

1

Group, LLC for $496,937.00 ("Part Two Personal Property"). Further, the Trustee seeks to sell the Serta Trademarked Inventory free and clear of the interest of Serta therein, without paying any royalties to Serta and without any protection of Serta's trademark rights, brand or goodwill. Serta objects to the Sale Motion because the Trustee cannot satisfy the standards of 11 U.S.C. § 363 of the Bankruptcy Code.   Moreover, Serta objects to the Sale Motion because (1) the Serta Trademarked Assets are not of property of the estate because the License Agreement  with PFI was terminated prior to the bankruptcy filing and neither Debtor nor the Bankruptcy Estate, have any right to sell the Serta Trademarked Inventory or use the Serta Trademarks, (2) under the License Agreement, Serta has the right to prohibit the sale of the Serta Trademarked Inventory; (3) the proposed sale of the Part One Personal Property is to an insider and is subject to higher scrutiny by the Court; and (4) the Sale Motion fails to adequately protect Serta's brand, intellectual property rights, goodwill and interest in the Trademarked Assets.

## II.   STATEMENT OF RELEVANT FACTS

1.   Serta is the owner of the following federally registered trademarks:

> SERTA
> PERFECT SLEEPER
> SERTAREST
> "Counting Sheep" Design
>
> and additionally is the owner of trademarks for: SERTAPEDIC  and WE MAKE
> THE WORLD'S BEST MATTRESS (the "Serta Trademarks").

2.   PFI and Serta entered into a License Agreement with an effective date of January 1, 2015, as amended by Amendments One, Two and Three ("Collectively, the License Agreement") which, *inter alia*, granted PFI "subject to Serta's rights to sell product through its Sleep To Go program, **an exclusive, non-transferable license** to use the Marks throughout the territories set forth in Exhibit C (the 'Licensed Territory'), on and in association with the Licensed

Goods distributed, offered for sale and sold in the Licensed Territory through the distribution channels set forth in Exhibit D (the 'Licensed Product')." (emphasis added). The Licensed Product included "warming products, including blankets, mattress pads, heating pads, battery powered heated pads, throws and foot boots, foot warmers, neck warmers, heated body pillows, travel throws and car blankets and stadium seats warmers ("Warming Products") and Seating Furniture Slipcovers and Protectors ("Non-Warming Products")(collectively, the "Licensed Products").

2.      Pursuant to the License Agreement, PFI was both the Licensee of the Serta Trademarks and the manufacturer of the Licensed Products. (Agreement ₱ 3.13).

3.      In the License Agreement, PFI agreed to pay Serta the royalties on the sales of the Licensed Product and a Guaranteed Minimum Royalty in the amount set forth in the License Agreement. (Agreement ₱ 4.2, Second Amendment, Exhibit G).

4.      PFI further agreed to hold Serta harmless, defend and indemnify Serta and its governing board, officers, shareholders, affiliates, employees, and agents (the "Serta Parties") against third party claims, liabilities, demands, judgments or causes of action, and costs and expenses related thereto arising out of the manufacture, distribution, advertising, use, sale or marketing of the Licensed Products, and any breach of the License Agreement. (Agreement ₱ 7.1).

5.      PFI agreed that it shall maintain at its own costs an insurance policy for bodily injury and property damage including product liability in the minimum amount of ten million dollars. (Agreement ₱ 7.3).

6.      Serta had the right to terminate the License Agreement *immediately* by given written notice to the other party if "either party is unable to pay its debts as and when they become due and payable…" (Agreement ₱ 8.1.3).

7.      In the event the License Agreement was terminated due to breach by PFI, PFI is required to "(a) immediately discontinue manufacturing, distributing, selling, and offering for sale all Licensed Products, (b) immediately discontinue use of the Marks, (c) promptly destroy all materials in its possession incorporating the Marks and provide to Serta a description of the materials destroyed, (d) promptly provide Serta with a statement reporting all existing inventory of the Licensed Products, and (e) promptly provide written notification of the termination of this Agreement ('Termination Notification') to Licensee's retailers and distributors."  (Agreement, ¶ 9.1).

8.      PFI failed to pay any royalties owed pursuant to the License Agreement to Serta for the Serta Trademarked Inventory and same has not been sold.

9.      According to the Sale Motion, the Serta Trademarked Inventory is located at a warehouse owned by Regal West Corporation ("Regal West") located in Anaheim, California.

10.     On or about June 15, 2020, PFI informed Serta that its Chinese parent company intended liquidate PFI,  place PFI in bankruptcy and that PFI would no longer be operating, paying its debts or performing its obligations under the License Agreement.

11.     On June 15, 2020, Serta sent notice to PFI that the License Agreement was terminated immediately pursuant to ¶ 8.1.3 of the License Agreement (the "Notice"). A true and correct copy of the Notice is attached hereto as **Exhibit A.**

12.     On July 24, 2020, Debtor filed this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

13.     On August 20, 2020, Trustee filed the Sale Motion. [Doc. No. 24].

14.     On August 20, 2020, Trustee filed an Ex Parte Motion Shortening Notice of Hearing on Motion to Sell. [Doc. No. 25].

15.    On August 21, 2020, this Court entered an Order Shortening Notice. [Doc. No. 30].

16.    Serta objects to and does not consent to the Sale, and for the reasons set forth below as well as additional bases to be raised at hearing, requests that the Court deny the Motion as to the Serta Trademarked Inventory.

## III.    ARGUMENT AND CITATION OF AUTHORITY

11 U.S.C. § 363 provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, **property of the estate**…" (emphasis added). In re Jenkins, 347 B.R. 77, 86 (Bkrtcy.N.D.Ill.,2006)(trustee has burden of proof to justify a 363 sale). The Court should deny Trustee's Motion to Sell because the Bankruptcy Estate has no right to sell the Serta Trademarked Inventory.

### A.  The Court Should Deny the Trustee's Motion Because the Trustee Has Failed to Satisfy that the Serta Trademarked Inventory is Property of the Estate

#### i.    *The License Agreement Was Terminated Pre-Petition*

Here, there is no dispute that the License Agreement was terminated prior to the petition date of this bankruptcy case.  (See Docket No. 1, Pg. 63).  The Trustee contends, however, that "the bankruptcy estate may have a deadline of September 13, 2020, to sell its Serta branded inventory pursuant to the terms of its License Agreement with Serta, as Serta sent a notice of termination to the Debtor on June 15, 2020.  [Docket No. 25, Pg. 2; Motion to Sell, ¶ 10].  Contrary to the Trustee's assertions, however, Section 9.2 of the License Agreement provides that,

> in the event that this Agreement is terminated for any reason *other than a breach* or other failure of Licensee to meet the quality standards warranted herein or **otherwise to perform its obligations under this Agreement**, Licensee shall have a period up to ninety (90) days following the date of termination in which to distribute, sell and offer for sale Licensee's inventory of Licensed Products on hand at the date of termination…(emphasis added).

In other words, if the License Agreement is terminated based on a breach or failure of the Licensee to perform under the License Agreement, then the 90 day period to sell the inventory of

Licensed Product then on hand at the time of termination does not apply.  Thus, the Trustee misconstrues paragraph 9.2 of the License Agreement and, not only is same not a valid basis for the hearing on the Motion to Sell to be held on an emergency basis but same also shows that the Bankruptcy Estate has no right to sell the Serta Trademarked Inventory.  PFI only had a limited, exclusive, non-transferable license to use the Serta Trademarks as set forth in the License Agreement, which prior to the Petition Date was terminated.   Accordingly, contrary to the Trustee's assertions the Bankruptcy Estate has no right to sell the Serta Trademarked Inventory, and as such the Trustee does not have an interest or any rights under the License Agreement.

### ii.    *The Serta Trademarked Assets are  Not Property of the Bankruptcy Estate*

Because the License Agreement was been terminated prior to the bankruptcy, the Trademark Assets are not a part of the bankruptcy estate under 11 U.S.C. 541(a)(1) and cannot be sold nor does the Trustee have any right to use/sell the Serta Trademarks or the Serta Trademarked Inventory. "A bankruptcy court may not allow the sale of property as 'property of the estate; without first determining whether the debtor in fact owned the property." Warnick v. Yassian (In re Rodeo Canon Development Corp.), 362 F.3d 603, 608-609 (9th Cir. 2004) explained by In re Yashouafar, No. 1:16-BK-16-12255-GM, 2019 WL 1967967, at *3 (Bankr. C.D. Cal. Apr. 30, 2019) ("where there is a dispute over the Debtor's interest in the property, a bankruptcy court may not authorize a sale of property under § 363 until the court resolves the dispute and determines that the debtor has an interest in the property that can be sold."). The termination of the License Agreement extinguished Debtor's ability to use the Serta Marks and to sell or offer for sale the Serta Trademarked Inventory.  (Agreement, 91.). "The estate cannot possess anything more than the debtor itself did outside bankruptcy." Mission Product Holdings, Inc. v. Tempnology, LLC, 139 S.Ct. 1652, 1663 (2019). The termination of the License Agreement pre-petition did not provide PFI the right to sell the trademarked products post-termination where the termination ws

due to PFI's breach and thus, the Trustee also does not have the right to sell the Serta Trademarked Inventory. "A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." <u>Id.</u> citing D. Baird, Elements of Bankruptcy 97 (6th ed. 2014). As here, the termination of the License Agreement caused the Debtor to no longer have the right to use Serta's Trademarks and/or sell the Serta Trademarked Inventory, and the filing of a bankruptcy cannot expand the right of the Debtor otherwise. <u>Mission</u>, supra at 1663 (A trustee is required to manage the estate in accordance with applicable law).

11 U.S.C. 363 provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, **property of the estate**." Id. (emphasis added). Because the License Agreement governing the use of Serta's Trademarks and the sale of the Serta Trademarked Inventory was terminated before the filling of the bankruptcy estate, the Serta Trademarked Inventory are not property of the estate, the estate has no right to use Serta's Trademarks or sell the Serta Trademarked Inventory and it cannot be subject to sale under 11 U.S.C. § 363, without Serta' consent.

**B.  Serta Has the Right to Control Sale of the Serta Trademarked Inventory**

The Trustee and PFI are bound by contracts executed by the Debtor prior to bankruptcy if those contracts are still binding upon the Debtor. <u>Mission Product Holdings, Inc. v. Tempnology, LLC</u>, 139 S.Ct. 1652, 1663 (2019)(Trustee's rejection of trademark license agreement under Section 365 of the Code was not a rescission of the agreement leaving other contracting party with no rights but a breach leaving the parties in the same positions they would be under non-bankruptcy law). Here, Paragraph 10 of the License Agreement provides that "[t]ermination of this Agreement shall not impair any rights of Serta, nor shall it relieve Licensee of any of its obligations under Section 9 hereof or any rights or obligations that have accrued prior to termination of this Agreement." Further, Paragraph 3.4 of the License Agreement provides that "Serta shall have the

7

right to designate or restrict the channels of trade and customers to whom Licensee may distribute, sell, or offer for sale the Licensed Products to protect Serta's name, the Marks, and the goodwill therein." Therefore, Serta has the right under the License Agreement to restrict the Debtor from selling the Serta Trademark Inventory to any customer.  Therefore, the Bankruptcy Estate has no right to sell the Serta Trademarked Inventory to any party without Serta's consent.

### C. The Court Should Deny the Trustee's Motion Because the Trustee Has Failed to Show that the Proposed Sale is Not to an Insider of Debtor that Requires Property Being Offered to the Public

Sale of the Serta Trademarked Inventory to RH should also not be approved, because RH is an insider of Debtor. Prior to initiating a § 363 sale to an insider, the property must have been offered to the public in some form, and the debtor must show that the assets are being sold for, at least, an acceptably appraised value of the assets:

> However, as pointed out by SunTrust, even when parties are completely forthright with the facts surrounding the transfer, § 363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse. In re Mallory Co., 214 B.R. 834, 837 (Bankr.E.D.Va.1997). This higher scrutiny requires (1) that the proposed purchase price be "at the very least the lessor [sic] of an acceptable appraised value or the tax assessment value," and (2) that the property must have been offered to the public in some form before the court can approve an insider sale. Id. at 838; In re Gulf Coast Oil Corp., 404 B.R. 407, 424 (Bankr.S.D.Tex.2009). In fact, the debtor must show that the assets are being sold for the highest price attainable. Mallory at 837. At the very least the court must be satisfied that an insider transaction is the result of bona fide arm's length transactions and not driven by other factors. See generally In re General Bearing Corp., 136 B.R. 361 (Bankr.S.D.N.Y.1992)."

In re Tidal Const. Co., Inc., 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009). Moreover, the Trustee must give reasonable notice of the sale to all potential bidders and affected parties. In re Sasso, 572 B.R. 331, 340 (Bkrtcy.D.N.M., 2017)(reasonable notice of the sale was required pursuant to 363).

An insider is defined as when an "individual or entity has a relationship "close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings

between the parties." <u>In re Tempnology, LLC</u>, 542 B.R. 50, 65 (Bkrtcy.D.N.H., 2015). In this case, some employees have left PFI and now are employed by RH, including Ken Hedrick, the former CEO of PFI. This gives rise to concerns that RH may continue to use Serta's Trademarks as a scheme to bypass the License Agreement with the very same employees employed by the Debtor without Serta's permission. Further, the Trustee has not offered any of the Serta Trademarked Inventory or other property being proposed to sell to the public or provided reasonable notice and opportunity for the marketing of such assets and thus, the sale should not be approved.

**D. There is no Dispute as to Serta's Trademark Rights and Serta Has a Right to Adequate Protection of its Trademark and its Rights Under the License Agreement**

A sale is only permitted pursuant to 11 U.S.C. 363(f) free and clear of liens and interests if: "(1) applicable non-bankruptcy law permits sale of the property free and clear of such interests; (2) such party consents to the sale; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (4) such interest is in bona fide dispute; or (5) such party could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  In order to prove that an interest is in "bona fide dispute", the trustee must show "an objective basis for avoiding the liens…" <u>In re Gaylord Grain L.L.C.</u>, 306 B.R. 624, 628 (8th Cir.BAP (Mo.),2004).

First, as shown above, there is no bona fide dispute as to Serta's ownership of the Serta Trademarks and the termination of the License Agreement pre-petition, thereby leaving no right by the Bankruptcy Estate to sell the Serta Trademarked Inventory.

Subpart (5) of Section 363 permitting sale if the party can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest is also not met with respect to Serta.  Lanham Act, § 34(a) of the Lanham Act prohibits assignment of a trademark without the owners' permission.  <u>Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC</u>, 562 F.3d

1067, 1068 (2009)(seller could not assign or conduct first sale of trademarked products without the trademark owner's permission).

Moreover, Serta as the licensor is entitled to adequate protection of its interest in the Trademarked Assets and its rights under the License Agreement. In re Tudor Motor Lodge Associates, Ltd. Partnership, 102 B.R. 936 (1989)(licensor was entitled to adequate protection of its brand in bankruptcy pursuant to its license agreement); In re Rupari Holding Corp., 573 B.R. 111, 121 (Bkrtcy., D. Delaware 2017)(Debtor could not assign trademark license without trademark licensor's consent and trademark licensor was entitled to retroactive annulment of automatic stay to pursue trademark infringement claims). To protect its marks, brand,  quality of goods and goodwill, Serta requires agreements with its licensees to ensure that products are of the quality expected from Serta branded products and to protect Serta from liability for products that do not meet that standard. Allowing the Serta Trademarked Inventory to be sold in violation of Serta's Trademarks and the License Agreement does not adequately protect Serta and opens Serta up to claims from end consumers of the product as well as usurping Serta's right to payment of royalties for use/sale of its Trademarks. At a minimum, for a sale to occur that would not be violative of Serta's Trademarks, the marks must be removed from the Serta Trademarked Inventory. Alternatively, Serta should be granted relief from stay to exercise its rights under state law to protect its interests in the Serta Trademarks and under the License Agreement.  Approving the sales as sought in the Sale Motion also does not adequately protect Serta because the proposed sales fail to include any provisions for indemnification of Serta for warranty and other claims arising from the ultimate sale of the Serta Trademarked Inventory to end users.  Moreover, sale of the Serta Trademarked Inventory to a party who has no license to use Serta's Trademarks also exposes Serta to the risk of denigration and dilution of its trademarks, brand, and goodwill as well

as interferes with Serta's right to license other licensee's to use and sell its Licensed Products, thereby unfairly competing and infringing on Serta's trademark rights.

**E.   The Alleged Warehouse Lien Does Not Trump Serta's interest in its Trademarks**

A trademark is a right to exclude and is therefore a property right. ("[t]he hallmark of a protected property interest is the right to exclude others.") <u>College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 673, 119 S. Ct. 2219, 144 L. Ed. 2d 605, 135 Ed. Law Rep. 362, 51 U.S.P.Q.2d 1065, 1999-1 Trade Cas. (CCH) ¶ 72551 (1999). The trademark is the property of the trademark owner, and trademark owners have the exclusive right of enjoyment to exclude others from using them. <u>Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.</u>, 240 U.S. 251, 259, 36 S. Ct. 269, 60 L. Ed. 629 (1916)("The right to use a trademark is recognized as a kind of property, of which the owner is entitled to the exclusive enjoyment to the extent that it has been actually used.") In fact, the License Agreement itself recognizes that Serta has exclusive goodwill associated with the Serta Trademarks. (Agreement ⌐ 6.1.) "[T]rademarks, which are the "property" of the owner because he can exclude others from using them." <u>Id</u>. See, <u>e.g., Kmart Corp. v. Cartier, Inc.</u>, 485 U.S. 176, 185–186, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) ("Trademark law, like contract law, confers private rights, which are themselves rights of exclusion. It grants the trademark owner a bundle of such rights"). Trademarks are not property in a sense that they are a good that can be sold, but they are the right to exclude the use of their mark and the good-will that is associated with it. See 15 U.S.C.A. § 1060 (A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark.).

Trademarks are not a tangible good that can be infringed, but it is ". . . the right of the public to be free of confusion and the synonymous right of a trademark owner to control his product's reputation." James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 274 (7th Cir. 1976). A trademark sends the message to the public that the trademark owner has controlled the quality of the product. Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108, 18 U.S.P.Q.2d 1156, 1158 (4th Cir. 1991) ("The use of the Shell marks implies that the product has been delivered according to all quality control guidelines enforced by the manufacturer." Defendant's distribution of bulk oil made by Shell but not distributed according to Shell quality control rules is not the distribution of genuine Shell brand oil and is an infringement.) "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark. … For this purpose the actual quality of the goods is irrelevant: it is the control of quality that a trademark holder is entitled to maintain." El Greco Leather Products Co. v. Shoe World, Inc., 806 F.2d 392, 395, 1 U.S.P.Q.2d 1016, 1017 (2d Cir. 1986), cert. denied, 484 U.S. 817, 98 L. Ed. 2d 34, 108 S. Ct. 71 (1987). The use of a trademark without permission and express control over the quality of the product by the trademark owner deprives the trademark owner of the right to maintain the goodwill that comes with a trademark and thus the sale is an infringement. See Id.

While a warehouse lien may be a separate right that can arise in inventory stored by such warehouse, the sale of trademarks is governed by the trademark owner. The warehouseman's lien on goods does not give them the permission to use the marks or sell branded product or inventory without a license. See, Stephen Slesinger, Inc. v. Disney Enterprises, Inc., 702 F.3d 640, 645, 105 U.S.P.Q.2d 1472 (Fed. Cir. 2012), cert. denied, 134 S. Ct. 125, 187 L. Ed. 2d 37 (2013), cert. denied, 134 S. Ct. 125, 187 L. Ed. 2d 37 (2013) (Quoting 3 J. Thomas McCarthy, *McCarthy on*

*Trademarks & Unfair Competition* § 18:1 (4th ed. 2012) (A license is a limited permit of another to use the mark). Utilizing the mark without permission of the trademark owner before the Serta Trademarked Inventory has been sold in an authorized sale is infringement). <u>Denbicare U.S.A. v. Toys "R" Us, Inc.</u>, 21 U.S.P.Q.2d 1711 (N.D. Cal. 1991), subsequent appeal, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996) *See* Restatement Third, Unfair Competition § 24, comment b (1995) ("Thus, the trademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce). In this instance, the Serta Trademarked Inventory has not been sold and it has not entered commerce and, in fact, the License Agreement was terminated pre-bankruptcy. Further, none of the proposed purchasers in the Sale Motion have a license to sell/distribute the Serta Trademarked Inventory to enter it into commerce. The License Agreement itself also provides the restriction that PFI cannot attempt to obtain ownership on its behalf or through a third party of any of the marks. (Agreement ¶ 6.2). Further, the right to sell products with the Serta Trademarks is restricted by the agreement to channels specifically approved by Serta. (Agreement ¶¶ 1.2, 3.4, 5.2). Lastly, per the License Agreement, PFI did not have the authority to entrust the Marks to the warehouse and the Marks should not subject to the warehouseman's lien. See Cal. Com. Code § 7209 (a warehousemen's lien is not effective against a person with a legal interest that did not deliver/entrust the goods to bailor with authority to ship/store/sell (or power to obtain delivery or disposition under other sections) or acquiesce in the procurement by the bailor or its nominee of any document).

Thus, even though Regal claims to hold a warehouse lien on the Serta Trademarked Inventory, same does not supersede or revoke Serta's trademark rights therein. Therefore, outside of bankruptcy if Regal exercised its asserted lien in the Serta Trademarked Inventory, it would be subject to Serta's rights in the Serta Trademarked Inventory and its right to pursue remedies for

violation of same.  In seeking to sell the Serta Trademarked Inventory under 363(f), free and clear

of liens, the Sale Motion, if approved, would improperly empower the resulting buyer(s) with more

than they could obtain outside of Bankruptcy, in that a final Sale Order free and clear of all liens

would likely be a strong defense to any infringement or other claims that Serta would otherwise

assert against the warehouseman as well as subsequent purchasers of the Serta Trademarked

Inventory, without its permission.

## IV.    CONCLUSION

The sales of the Serta Trademarked Inventory proposed in the Sale Motion should not be

approved because (1) PFI"s license to use the Serta Trademarks and sell the Serta Trademarked

Inventory is terminated and thus the Trustee does not have the power to use the Serta Trademarks

or sell the Serta Trademarked Inventory; (2) Serta has the right to block the sale under the terms

of the License Agreement; (3) the proposed Sale to RH is to an insider, and the Trustee has not

met the 363 requirements to sell to an insider, (4) the Trustee has not satisfied the requirements of

§ 363(f) and Serta's interests in the Trademarked Assets is not adequately protected by the

proposed Sale, and (5) no royalties have been paid to Serta on the Serta Trademarked Inventory

and same has not been sold and allowing a sale to an unlicensed third party impairs and interferes

with Serta' trademark rights.

**WHEREFORE**, Serta respectfully requests this Court to deny the Trustee's Motion for

Sale insofar as it seeks to sell Serta Trademarked Inventory.


This 28th day of August 2020.


**ROGERS LAW OFFICES**
__/s/ Beth. E. Rogers_____
Beth E. Rogers

14

Georgia Bar No. 612092
100 Peachtree St., Ste. 1950
Atlanta, Georgia 30303
770-685-6320 phone; 678-990-9959 fax
*Attorneys for Serta, Inc.*

**BURT & CORDES, PLLC**
By _/s/ Stacy C. Cordes_____
Stacy C. Cordes
State Bar No. 18122
122 Cherokee Road, Suite 1
Charlotte, North Carolina 28207
Telephone:      704.332.3282
Facsimile:      704.332.3324
*Local counsel for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that the following parties have been served with a true copy of the  SERTA, INC.'S OBJECTION TO TRUSTEE'S MOTION FOR AUTHORITY TO SELL INVENTORY, TRADEMARKS AND CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363 by filing said document through the Court's CM/ECF System and/or by placing a true and correct

copy in First Class United States Mail with adequate postage affixed to guarantee delivery with

service to the following parties:

John W. Taylor
John W. Taylor, P.C.

Ross Robert Fulton
Rayburn Cooper & Durham, P.A.

Antonio Eugene Lewis
King & Spalding

Matthew L Tomsic
Rayburn Cooper & Durham, P.A.

Anna S. Gorman
Grier Wright Martinez, PA

Joseph W. Grier, III
Grier Wright Martinez, PA
*Attorneys for Debtor*

 This 28th day of August, 2020.

### ROGERS LAW OFFICES

/s/ Beth E. Rogers
Beth E. Rogers
Georgia Bar No. 612092