UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 20-30706 |
| ) | Chapter 7 |
| PERFECT FIT INDUSTRIES, LLC, ) | |
| ) | |
| Debtor. ) | |

**TRUSTEE'S RESPONSE TO SERTA, INC.'S OBJECTION TO MOTION OF TRUSTEE FOR AUTHORITY TO SELL INVENTORY, TRADEMARKS AND CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363**

The Trustee, John W. Taylor, hereby responds to Serta Inc.'s objection to his Motion for Authority to Sell Inventory, Trademarks and Certain Personal Property Free and Clear of Liens, Claims, Encumbrances and Other Interest and says as follows:

**I. The Serta Branded Inventory is Property of the Bankruptcy Estate.**

Serta's assertion that the Serta Branded Inventory is not property of the bankruptcy estate is contradicted by the terms of its own Agreement. Serta's June 15, 2020 Termination Letter states:

> "Pursuant to section 8.1.3 of the Agreement and the non-payment of Q1 2020 royalties due on April 30th, 2020 by Perfect Fit, Serta is terminating the Agreement effective immediately. "

As to termination, section 8 of the Agreement provides in relevant part:

8. Termination

    8.1    Serta and Licensee each shall have the right to terminate this Agreement immediately by giving notice to the other party if:

        8.1.1  Either party fails to observe or perform any covenant or obligation herein and if such default is not cured within sixty (60) days after the party receives written notice specifying such default (or such other notice period as specifically set forth in this Agreement; . . .

        8.1.3  Either party is unable to pay its debts as and when they became due; . . .

Under the terms of the Agreement, Serta's immediate termination for non-payment of Q1 2020 royalties due on April 30, 2020, fails for two reasons. The first is that as of April 30, 2020, Perfect Fit actually had a credit balance for Q1 2020 royalties due to the 2019 royalty refund for exceeding certain sales goals. The second reason that Serta's immediate termination for non-payment of Q1 2020 royalties due on April 30, 2020 fails is that even if Perfect Fit owed Q1 2020 royalties to Serta, Section 8.1.1 of the Agreement only allows Serta the right to immediately terminate for such failure if such default is not cured within 60 days after written notice specifying such default is received by Perfect Fit. No such written notice was given by Serta at least 60 days prior to June 15, 2020, nor could it have given such notice. In addition, neither Perfect Fit nor the Trustee has received a written notice of immediate termination after 60 days from June 15, 2020. For these reasons, the Agreement has not been terminated for non-payment of Q1 2020 royalties due April 30, 2020.

As such only basis for the immediate termination of the Agreement was Section 8.1.3 which provides for immediate termination if either party is unable to pay its debts as and when they became due. While Serta had the right to immediately terminate the Agreement if either party was not paying its debts as and when they became due, it was not an obligation under the terms of the Agreement. As such Serta terminated the Agreement for a reason other than a breach or other failure to perform its obligations under the Agreement.

Because Serta terminated the Agreement for a reason other than a breach or failure to perform its obligation under the Agreement by Perfect Fit, pursuant to Section 9.2 of the Agreement, Perfect Fit has a period of up to 90 days following the date of termination in which to distribute, sell, and offer for sale the Serta Branded Inventory on hand at the date of termination. The 90th day after the Termination Letter is September 13, 2020.

As such, the Serta Branded Inventory is property of the bankruptcy estate.

## II. Serta Has No Right to Block the Proposed Sale

Section 9 of the Agreement expressly enumerates Perfect Fit's duties upon termination of the Agreement and provides in relevant part:

9. Licensee's Duties upon Termination

9.1 . . .

9.2 Notwithstanding the provisions of Section 9.1, in the event that this Agreement is terminated for any reason other than a breach or other failure of Licensee to meet the quality standards warranted herein or otherwise to perform its obligations under this Agreement, Licensee shall have a period up to ninety (90) days following the date of termination in which to distribute, sell and offer for sale Licensee's inventory of Licensed Products on hand at the date of termination.

Serta asserts that it can block the proposed sale simply by exercising a purported right to restrict the sale of the Serta Branded to any customer. Such a position smacks of bad faith and unfair dealings. According to Serta, it can enter into an exclusive license agreement with Perfect Fit, induce it to spend over $2.5 million dollars producing Serta Branded Inventory, terminate the Agreement and then prevent Perfect Fit from exercising its 90 day right to sell the inventory under the Agreement by restricting to zero the number of companies to which it can sell the inventory. Serta's position is in direct conflict with Perfect Fit's right to sell under Section 9.2 and its position would render such right completely illusory.

## III. Royal Heritage is not an Insider

Serta's third argument is as baseless as it is troubling. Ken Hedrick has not been employed by Royal Heritage. Serta has offered no evidence of such employment because none exists. Serta's Exhibit 2 belays its own assertion. In it Mr. Hedrick tells Serta *"Unfortunately, I am still under contract with Perfect Fit and I cannot be involved with setting up a new deal for the remainder of 2020 for Royal Heritage."* Mr. Hedrick is a witness for the bankruptcy estate as to the sale and he can testify regarding his interactions with Royal Heritage.

Serta's argument that the Court should not approve the Trustee's proposed sale of the Serta Branded Inventory because he has not adequately marketed it, is disingenuous at best. Even more so since its position appears to be that it all be destroyed. The fact of the matter is that Serta has likely chilled the making of offers on the Serta Branded Inventory with its threats of trademark infringement.

Given the size and the nature of the inventory, the pool of potential buyers is limited. The sheer scale of the volume of inventory is hard to get a handle on. It is estimated that the entire inventory would require approximately 4,500 pallets and constitute at least 96 trailer loads of goods, with the Serta Branded Inventory constituting about one-third of the total. This is coupled with the fact that the Trustee had just 51 days of the 90 days remaining under the Agreement, the storage fees are accruing at over $86,000 per month and the product is seasonal as it is a winter product. If it is not sold soon, it will be too late to get the product to market for this selling season and it will have to be stored for another year.

At the time the bankruptcy was filed, Regal West had identified four potential buyers to enforce its warehousemen's lien, including JLA Home and Royal Heritage. The Trustee solicited offers from all four, but only JLA Home and Royal Heritage expressed any interest. In addition, the Trustee maintains a list of over a dozen known bankruptcy asset buyers that span the country. The Trustee solicited offers from each of them without receiving any interest.

JLA Home, which the Trustee is informed is a new licensee of Serta, only offered $200,000 on $1,499,555 of inventory at cost basis. Serta actually supported the proposed sale to JLA Home, but now asserts that not enough has been done to market the inventory.

In addition, R&M Group made an offer on Part One of the Personal Property which was lower than that of Royal Heritage and Royal Heritage made an offer for all of the Personal Property which was lower than the combination of the two offers accepted by the Trustee. In the

Trustee's business judgment, the proposed sale is the highest and best that can reasonably be obtained by the bankruptcy estate.

**VI.    The Proposed Sale Does Not Violate Serta's Rights**

Perfect Fit's post termination rights and obligations are clearly defined under Sections 9 and 10 of the Agreement. As shown above, Perfect Fit is entitled to 90 days to distribute, sell and offer for sale the Serta Branded Product.

Furthermore Section 10 of the Agreement provides as follows:

> 10.    Survival of Rights and Obligations
>
> 10.1    Termination of this Agreement shall not impair any rights of Serta, nor shall it relieve Licensee of any of its obligations under Section 9 hereof or any rights or obligations that have accrued prior to the termination of this Agreement.

By its own terms, the only post termination obligations of Perfect Fit are set forth in Section 9 of the Agreement. Section 9 does not put any restrictions or obligations on the post termination sale of the Serta Branded Inventory other than the limit of 90 days to do so. Had Serta wanted to include other post termination restrictions or obligations on Perfect Fit's right to sell the Serta Branded Inventory post termination, it could have easily done so. Serta cannot now add restrictions and obligations to the Agreement in the bankruptcy proceeding that did not exist outside of the bankruptcy proceeding.

Furthermore, Serta's agreement that the proposed sale violates its rights under The Latham Act is without merit. As shown above, since at least 2015, Perfect Fit has had a valid license to manufacture and sell the Serta Branded Inventory. The Serta Branded Inventory was properly manufactured to the specifications and quality control standards of Serta. The license was not terminated for any quality control issues or other failure of Perfect Fit to perform its obligations under the Agreement. As such, pursuant to the express terms of Section 9.2 of the Agreement, Perfect Fit has a valid license to sell the Serta Branded inventory through and

including September 13, 2020. As such none of Serta's rights under The Latham Act will be violated by the proposed sale. By and through the Agreement, Serta has already given permission and consent to sell the Serta Branded Inventory and no further permission or consent from Serta is required.

### V.    Trustee's Lien Rights Under Bankruptcy Code Section 544

Pursuant to Bankruptcy Code Section 544(a) the Trustee has the rights and powers of a judicial lien creditor and a judgment lien creditor with a lien on the inventory as of the commencement of the case. The Agreement does not prohibit Perfect Fit from granting a security interest in the Serta Branded Inventory by way of simple contract. As such the Court may authorize the sale of the inventory to enforce the Trustee's lien rights under Bankruptcy Code Section 544.

WHEREFORE, the Trustee respectfully prays the Court that it grant the Trustee's Motion and that it grant such other, further, or additional relief as may be proper to affect the sale of the Personal Property that the Court deems just and proper.

Respectfully submitted this 30th day of August, 2020.

/s/ John W. Taylor
John W. Taylor, Bar No. 21378
Attorney for Trustee
4600 Park Road, Suite 420
Charlotte, NC  28209
(704) 540-3622

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the TRUSTEE'S RESPONSE TO SERTA, INC.'S OBJECTION TO MOTION OF TRUSTEE FOR AUTHORITY TO SELL INVENTORY, TRADEMARKS AND CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363 by either Electronic Case Filing as indicated or depositing copies of same in the exclusive care and custody of the United States Postal Service, with proper postage thereto affixed to the below listed parties this 30th day of August, 2020.

| | |
|---|---|
| Joseph W. Grier, III, Attorney for Debtor | Via Electronic Case Filing |
| Beth Rogers, Attorney for Serta, Inc. | Via Electronic Case Filing |

/s/ John W. Taylor
John W. Taylor, Bar No. 21378
4600 Park Road, Suite 420
Charlotte, NC  28209
(704) 540-3622